UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE: SHIRLEY M. ADAMS
CASE NO. 04-14818-DWH
CHAPTER 13

OPINION

On consideration before the court is a motion, filed by the debtor, Shirley M. Adams, ("debtor or Adams"), for declaratory judgment relief that she should not be precluded from pursuing a personal injury/wrongful death cause of action in the Circuit Court of Lafayette County, Mississippi; a response to said motion, as well as, a counter motion for declaratory judgment having been filed by Graceland Care Center of Oxford, LLC; Graceland Management Company, Inc.; Lafayette LTC, Inc.; and Yalobusha General Hospital & Nursing Home; (hereinafter collectively referred to as "the state court defendants"); a reply to the counter motion having been filed by Adams; and the court, having heard and considered same, hereby finds as follows, to-wit:

I.

Referral, Jurisdiction, Core Proceeding

This proceeding has reached this court in a rather unusual manner. As will be discussed in more detail, Adams filed a Chapter 13 bankruptcy case in this court on August 9, 2004. While her bankruptcy case was pending, she initiated a personal injury/wrongful death cause of action against the state court defendants in her individual capacity, as well as, as the survivor and heir of her deceased mother, Dorothy Turner. When the state court defendants learned that Adams had filed bankruptcy and had not disclosed the existence of the personal injury/wrongful death cause

of action in her bankruptcy schedules, they filed a motion for summary judgment asserting that Adams' complaint should be dismissed because of the doctrine of judicial estoppel. Although the state court judge initially determined that the cause of action should be dismissed, the decision was stayed as a result of a recent opinion rendered by of the Mississippi Supreme Court in *Copiah County, Mississippi v. Oliver*, 51 So.3d 205 (Miss. 2011). In that case, the supreme court held that the state court proceedings should be stayed to allow the bankruptcy court to decide whether the plaintiff, Oliver, had a duty to disclose her claim for damages as an asset in her bankruptcy action. *Id.* at 207. As a result of the *Oliver* decision, the Circuit Court of Lafayette County stayed Adams' cause of action and referred the question to this court as to whether Adams had a "duty to disclose her claim for damages as an asset in her bankruptcy action." (See the Order Staying Proceedings, dated December 16, 2011, Circuit Court of Lafayette County, Mississippi, Cause No. L08-343.)

The court has jurisdiction of the subject matter of and the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This court concludes that Adams' personal injury/wrongful death cause of action against the state court defendants is clearly a non-core proceeding. 28 U.S.C. § 157(b)(2)(B). However, the question of whether Adams' state law cause of action should be disclosed as a potential asset of her Chapter 13 bankruptcy estate is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (E), and (O).

None of the parties have raised any concerns about the applicability of the United States Supreme Court decision in *Stern v. Marshall*, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011). Regardless, if an appellate court should conclude that this court is incorrect that the question of whether an asset should be disclosed as property of a bankruptcy estate is a core proceeding, then

2

this court would suggest that this decision be considered as proposed findings of fact and conclusions of law. A final order can then be entered by the appellate court.

II.

## Adams' Bankruptcy Filing

On August 9, 2004, Adams filed a voluntary petition for relief pursuant to Chapter 13 of the United States Bankruptcy Code. Her Chapter 13 plan, which proposed to pay nothing to unsecured creditors, was confirmed on February 1, 2005. Adams completed her plan and received her bankruptcy discharge on March 31, 2009, and her case was closed shortly thereafter.

As will be discussed in more detail hereinbelow, Adams filed the aforementioned personal injury/wrongful death cause of action in the Circuit Court of Lafayette County, Mississippi, on May 14, 2008. This cause of action was not listed in her bankruptcy schedules or disclosed to her creditors or the Chapter 13 trustee. When the state court defendants raised the affirmative defense of judicial estoppel, Adams filed a motion to reopen her bankruptcy case which was granted by an order entered October 16, 2009. Thereafter, she amended her bankruptcy schedules to list the state law cause of action as an asset. She then claimed the lawsuit as exempt which prompted an objection from the Chapter 13 trustee. Because the language of the state statute, Miss. Code Ann. § 85-3-17, does not permit an exemption until a personal injury cause of action has been reduced to a judgment, Adams' exemption claim was disallowed without prejudice so that Adams could reassert her exemption claim if the cause of action was ever reduced to a judgment.

III.

<u>Adams' State Court Cause of Action</u>

As noted above, Adams initially filed a complaint in the Circuit Court of Lafayette County, Mississippi, on May 14, 2008. This initial complaint was filed after the death of Adams' mother, Dorothy Turner, who died on December 7, 2007. Adams amended her complaint and then filed a second amended complaint to add the defendant, Yalobusha General Hospital & Nursing Home. While relatively similar to the other iterations, the second amended complaint sets forth the following theories of recovery:

Count 1: Negligence.

Count 2: Gross negligence, willful, wanton, reckless, malicious and/or intentional conduct.

Count 3: Negligence pursuant to the Mississippi Medical Malpractice Tort Reform Act.

Count 4: Breach of contract.

Count 5: Breach of fiduciary duty.

Count 6: Violation of the Mississippi Unfair and Deceptive Trade Practices Act.

Count 7: Damages.

Adams demanded a trial by jury and requested punitive and compensatory damages from the state court defendants plus costs and all other relief to which she was entitled under law.

As a result of the motion for summary judgment filed by the state court defendants, this matter has now been referred to this court to determine whether Adams had a duty to disclose her claim for damages as an asset in her bankruptcy case. When this court became aware of the referral, a status conference was scheduled with the parties to formulate a procedural vehicle for

4

this court to appropriately render a decision. Thereafter, Adams' attorneys filed the motion for a declaratory judgment that the affirmative defense of judicial estoppel was not applicable. This was followed by the state court defendants counter motion for a declaratory judgment. An evidentiary hearing was conducted by this court which revealed the following factors:

a)  Adams testified that she had been concerned about her mother's health and the treatment that she was receiving for quite some time prior to her death in December, 2007. She contemplated a cause of action against the medical providers and consulted a personal injury attorney. She signed a contract of employment with the attorney on March 31, 2006.

b)  Adams indicated that her father had predeceased her mother, and that she was the only child. Therefore, she is the sole beneficiary of the personal injury/wrongful death cause of action.

At the conclusion of the hearing, this court wanted to ascertain whether the Chapter 13 trustee in Adams' bankruptcy case had an interest in pursuing the state court cause of action. *See Reed v. City of Arlington*, 650 F.3d 571 (5th Cir. 2011) (en banc), and *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380 (5th Cir. 2008). The trustee was afforded an opportunity to review the factual issues in both the bankruptcy case and the state court proceeding before submitting a response to the court. On July 30, 2012, the Chapter 13 trustee submitted a letter which advised as follows:

> "After reviewing the timely filed and allowed general unsecured claims which total $4,719.53, the trustee reports that she would abandon any settlement or judgment proceeds and not administer the payment of such on behalf of the bankruptcy estate."

Since the trustee did not want to pursue the cause of action, the question as to the duty to disclose the cause of action and the potential applicability of the theory of judicial estoppel must

be based exclusively on Adams' conduct. The trustee's lack of knowledge of Adams' state court cause of action does not provide Adams a "safe harbor."

IV.

Adams' Duty to Disclose

Is the state law cause of action filed by Adams an asset of her Chapter 13 bankruptcy estate since it became an asset after her bankruptcy petition was filed and after her Chapter 13 plan was confirmed? Section 1306(a) of the Bankruptcy Code answers this question in the affirmative, to-wit:

> (a) Property of the estate includes, in addition to the property specified in section 541 of this title
>
> > (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and
> > (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

11 U.S.C. § 1306.

Since the cause of action is clearly an asset includable in Adams' bankruptcy estate, did she have a duty to disclose this cause of action by amending her bankruptcy schedules so that her creditors and the Chapter 13 trustee could be made aware of its existence? In *In re Coastal Plains, Inc.*, 179 F.3d 197, 207-08 (5th Cir. 1999), Judge Rhesa Barksdale, writing for the court, provided the following:

> It goes without saying that the Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, *including contingent and unliquidated claims*. 11 U.S.C. § 521(1) ("The debtor shall-(1) file

6

a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs"). "The duty of disclosure in a bankruptcy proceeding is a continuing one, and a debtor is required to disclose all potential causes of action". *Youngblood Group v. Lufkin Fed. Sav. & Loan Ass'n*, 932 F.Supp. 859, 867 (E.D.Tex.1996). "'The debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information ...prior to the confirmation to suggest that it may have a possible cause of action, then that is a "known" cause of action such that it must be disclosed'". *Id.* (brackets omitted; quoting *Union Carbide Corp. v. Viskase Corp. (In re Envirodyne Indus., Inc.)*, 183 B.R. 812, 821 n. 17 (Bankr.N.D.Ill.1995)). "*Any claim with potential must be disclosed,* even if it is 'contingent, dependent, or conditional'". *Id.* (quoting *Westland Oil Dev. Corp. v. MCorp Management Solutions, Inc.*, 157 B.R. 100, 103 (S.D.Tex.1993)) (emphasis added).

This question is also answered in *Jethroe v Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005), where Judge Jerry Smith, writing for the court, stated the following:

> A plaintiff is judicially estopped from pursuing an EEOC charge filed while his bankruptcy petition was pending and where he did not fulfill his duty to amend the petition to include that claim. *See Kamont v. West*, 83 Fed.Appx. 1, 3 (5th Cir.2003) (unpublished). The logic of *Kamont* is sound: Jethroe was under a duty both to disclose the existence of her pending EEOC complaint when she filed her petition and to disclose her potential legal claims throughout the pendency of that petition. *See Browning*, 179 F.3d at 208. Accordingly, she was estopped from raising the claims in the district court. The obligation to disclose pending and unliquidated claims in bankruptcy proceedings is an ongoing one. *See id.* at 207-08.

Consequently, the authorities from the Fifth Circuit Court of Appeals make it clear that Adams had a continuing duty throughout the pendency of her bankruptcy case to disclose the state law cause of action. Adams was the sole beneficiary of her mother, and the cause of action was clearly a contingent asset that belonged to her and to her bankruptcy estate.

The previous paragraph technically answers the question that was referred to this court by the Circuit Court of Lafayette County. Adams had a duty to disclose her claim for damages as an asset of her bankruptcy case. Initially, this court thought that it was being called upon to

7

determine whether the doctrine of judicial estoppel applied to preclude Adams from prosecuting the state law cause of action. Apparently, the state court defendants did not think that issue was before this court because, in their memorandum of law, they asserted the following: "The broader issue of whether Adams should be judicially estopped is not before this Court." Since the state court defendants do not seek a decision from this court as to the applicability of judicial estoppel, one will not be forthcoming. This court will submit this opinion and the related order to the presiding state court judge who can then render a decision on the applicability of judicial estoppel. However, in order to provide insight from a bankruptcy perspective, the court will include in the next section of this opinion certain authorities which might be informative.

V.

## The Doctrine of Judicial Estoppel

To see how bankruptcy law impacts the doctrine of judicial estoppel, *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3rd Cir. 1988), *cert. denied*, 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988), provides the following overview:

> We are also mindful of the equitable concept of judicial estoppel. This doctrine, distinct from that of equitable estoppel, applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted. Judicial estoppel looks to the connection between the litigant and the judicial system while equitable estoppel focuses on the relationship between the parties to the prior litigation. *Scarano v. Central Railroad Co.*, 203 F.2d 510 (3d Cir. 1953); *USLIFE Corp. v. U.S. Life Insurance Co.*, 560 F.Supp. 1302 (N.D. Tex. 1983).
>
> We conclude that Oneida's failure to list its claim against the bank worked in opposition to preservation of the integrity of the system which the doctrine of judicial estoppel seeks to protect. Although we stop short of finding that, as the bank urges, Oneida's prior silence is equivalent to an acknowledgement that it did not have

Case 04-14818-JDW   Doc 90   Filed 10/12/12   Entered 10/12/12 08:59:48   Desc Main
Document      Page 9 of 12

a claim against the bank, we agree that its current suit speaks to a position clearly contrary to its Chapter 11 treatment of the bank's claim as undisputed.

*Id.* at 419.

In *In re Coastal Plains, Inc.*, 179 F.3d at 205, the court stated as follows:

> Judicial estoppel is "a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position". *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988). The purpose of the doctrine is "to protect the integrity of the judicial process", by "prevent[ing] parties from playing fast and loose with the courts to suit the exigencies of self interest". *Id.* (internal quotations marks, parentheses, and citation omitted). Because the doctrine is intended to protect the judicial system, *rather than the litigants*, detrimental reliance by the opponent of the party against whom the doctrine is applied is not necessary. *See Matter of Cassidy*, 892 F.2d 637, 641 & n. 2 (7th Cir.), *cert. denied*, 498 U.S. 812, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990).

(internal footnotes omitted).

In *In re Superior Crewboats, Inc.*, 374 F.3d 330, 335 (5th Cir. 2004), Judge Edith Jones indicated that the Fifth Circuit recognized three requirements which underpinned to the theory of judicial estoppel: "(1) the party is judicially estopped only if its position is clearly inconsistent with the previous one; (2) the court must have accepted the previous position; and (3) the non-disclosure must not have been inadvertent."

Addressing the inadvertence requirement, which is an issue in the Adams' proceeding, Judge Jones provided the following guidance:

> Third and last, the Hudspeaths' non-disclosure of a viable personal injury claim was not inadvertent. "[T]he debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims *or* has no motive for their concealment." *Coastal Plains*, 179 F.3d at 210 (emphasis in original). Neither consideration exculpates the Hudspeaths in this instance. The Hudspeaths certainly had knowledge of the undisclosed claim, initiating the suit only months after filing for bankruptcy and requesting service of process during the pendency of the bankruptcy petition. Still, the couple remained silent until months later. When Mrs. Hudspeath finally informed the bankruptcy

9

trustee about the suit, she wrongly identified it as prescribed. The Hudspeaths' argument that there was confusion as to whether the Louisiana or maritime limitations period controlled is of no moment. The Hudspeaths were aware of the facts underlying the claim and their continuing obligation to disclose its existence to the court. Alleged confusion as to a limitations period does not evince a lack of knowledge as to the existence of the claim. The district court's conclusion that a fact issue existed concerning the debtor's wrongful intent was thus incorrect.

The Hudspeaths had the requisite motivation to conceal the claim as they would certainly reap a windfall had they been able to recover on the undisclosed claim without having disclosed it to the creditors. Such a result would permit debtors to "[c]onceal their claims; get rid of [their] creditors on the cheap, and start over with a bundle of rights." *Payless Wholesale Distrib., Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570, 571 (1st Cir. 1993). Accordingly, the Hudspeaths cannot be permitted, at this late date, to re-open the bankruptcy proceeding and amend their petition. Judicial estoppel was designed to prevent such abuses. *See Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1288 (11th Cir. 2002) ("Allowing [the debtor] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing personal assets only if he is caught concealing them.")

*Id.* at p. 335-36.

The most recent opinion from the Fifth Circuit on the issue of judicial estoppel is *Love v. Tyson Foods, Inc.*, 677 F.3d 258 (5th Cir. 2012), In this case, Love, a Chapter 13 debtor, filed a racial discrimination complaint against his former employer, Tyson Foods, Inc., but failed to schedule his claim as an asset of his bankruptcy estate. Tyson Foods filed a motion for summary judgment, asserting the doctrine of judicial estoppel, which was sustained by the United States District Court for the Southern District of Mississippi. The Fifth Circuit affirmed the district court's dismissal of Love's complaint. Judge King, writing for the court, commented on the questions of inadvertence and motive as follows:

> Love's sole argument on appeal is that his failure to disclose his claims was inadvertent. "[I]n considering judicial estoppel for bankruptcy cases, <u>the debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their</u>

10

> concealment." *In re Coastal Plains, Inc.*, 179 F.3d at 210 (emphases omitted). Love concedes that he knew about the undisclosed claims against Tyson, but he argues that he had no motive to conceal his claims.
>
> In its motion for summary judgment, Tyson set forth a motivation for Love to keep his claims concealed–the prospect that Love could keep any recovery for himself. As one court has stated, "<u>the motivation sub-element is almost always met if a debtor fails to disclose a claim or possible claim to the bankruptcy court. Motivation in this context is self-evident because of potential financial benefit resulting from the nondisclosure.</u>" *Thompson v. Sanderson Farms, Inc.*, No. 3:04CV837-WHB-JCS, 2006 U.S.Dist.LEXIS 48409, at *12-13 (S.D.Miss.May 21, 2006) (citation omitted). Similarly, this court has found that debtors had a motivation to conceal where they stood to "reap a windfall had they been able to recover on the undisclosed claim without having disclosed it to the creditors." *Superior Crewboats, Inc. v. Primary P & I Underwriters (In re Superior Crewboats, Inc.)*, 374 F.3d 330, 336 (5th Cir.2004). After Tyson set out this motivation to conceal, it fell to Love to show that the omission of his claims from his schedule of assets was inadvertent. *See Jethroe*, 412 F.3d at 600-01.

*Id.* at 262 (emphasis supplied).

To review an egregious factual scenario where judicial estoppel was applied in a bankruptcy context, this court would refer the parties to one of its own decisions *Pryor v. Deberry, et al. and Safeway Ins. Co. v. Pryor, et al. (In re Pryor)*, 341 B.R. 571 (Bankr. N.D. Miss. 2006).

In summary, the question that was referred to this court was whether Adams had a duty to disclose her personal injury/wrongful death cause of action as an asset of her bankruptcy estate. Relying on the opinions rendered by the Fifth Circuit Court of Appeals, this court answered this question in the affirmative because Adams did indeed have a continuing duty to disclose. The question of whether judicial estoppel applies to preclude Adams' cause of action may now be determined in the Circuit Court of Lafayette County. Perhaps, the inclusion herein of cases

11

of cases which have addressed the issue of judicial estoppel will be of some assistance in the decision process.

A separate order, consistent with this opinion, will be entered contemporaneously herewith. The opinion and order shall be duly entered in this bankruptcy case and copies shall be forwarded to the Circuit Court of Lafayette County, Mississippi, to be entered in CAUSE NO. L08-343.

This the 10th day of October, 2012.

                                                DAVID W. HOUSTON, III
                                                UNITED STATES BANKRUPTCY JUDGE